Filed 4/16/14  In re K.A. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>K.A.,<br><br>        Defendant and Appellant. | A138808<br><br>(Alameda County<br>Super. Ct. No. SJ12018517) |

K.A. (appellant), born in 1995, appeals from jurisdictional and dispositional orders in which the juvenile court found true the allegations that he committed robbery (Pen. Code, § 211[1]) and assault likely to produce great bodily injury (§ 245, subd. (a)(4)), and resisted a peace officer (§ 148, subd. (a)).  Appellant contends:  (1) his trial counsel provided him with ineffective assistance of counsel because he failed to introduce a photograph into evidence and to impeach the victim with the photograph regarding the type of shoes appellant was wearing at the time of the incident; and (2) remand is required for an express declaration as to whether the assault is a misdemeanor or felony. As the Attorney General (respondent) concedes, the matter must be remanded for the

---

[1]All further statutory references are to the Penal Code unless otherwise stated.

1

juvenile court to state whether the assault was a misdemeanor or a felony. In all other respects, the orders are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 22, 2013, an amended wardship petition was filed (Welf. & Inst. Code, § 602, subd. (a)) alleging appellant committed felony robbery (§ 211), felony assault likely to produce great bodily injury (§ 245, subd. (a)(4)), and misdemeanor resisting a peace officer (§ 148, subd. (a)). The petition further alleged that appellant had previously been found to have caused injury while evading a peace officer (Veh. Code, § 2800.3). After a contested jurisdictional hearing, the juvenile court made true findings on all of the above counts. The court set the maximum time of confinement at nine years, four months.

At approximately 11:00 p.m. on March 20, 2013, 27-year-old Alexis O'Neal, employee at a department store located near a Bay Area Rapid Transit (BART) station, had finished work and was walking towards the BART station when she saw three young men walk towards—and continue past—her. One of them was wearing a black hoodie, and another had on a light hoodie and red and white shoes. The third person was wearing blue jeans but she "couldn't make out the rest." O'Neal continued walking and entered a parking lot that was located behind the BART station. Hearing footsteps, she turned around and saw a young African American man with a black hoodie, blue jeans and "an afro," crouched on the ground to her right. She looked the other way and saw another young African American man wearing a light gray hoodie, blue jeans, and red and white shoes. In court, O'Neal identified the man with the light gray hoodie as appellant. She testified that appellant was one of the three men who had walked towards her and passed by her before she reached the parking lot.

When O'Neal tried to run, appellant tripped her, causing her to fall face first to the ground. A third individual joined in, and all three kicked O'Neal and punched her in the face with closed fists. Appellant punched her in the eye. After being attacked for "[a]bout five to ten minutes," O'Neal was able to look up and identify who was who. The man with the black hoodie took her messenger bag, which contained her laptop

2

computer and other property, and all three men fled. One man went towards the front of the BART station, and the other two fled in the opposite direction. O'Neal eventually got up and went to the BART station. She dragged one foot and "shuffl[ed]" her way to a BART police officer to report the incident. She described the assailants as "three black males, all 15 to 18 years old, and approximately 5'4" tall, and skinny build."

In court, O'Neal testified that two of the men were "around my height [5'5"], and the other one was a little bit . . . taller. One to two feet." She testified that appellant, who she described as the "taller one" with the gray hoodie, was "[l]ike 5'6" " and that the other two—one wearing the black hoodie and the third individual wearing blue jeans—were shorter. She testified that the tall person was wearing red and white shoes, and that the other two were wearing black shoes. She did not see any of them wearing a hat.

Appellant's trial counsel stood up and had appellant stand next to him.[2] Counsel mentioned that his own height was approximately 5 feet, 7 inches. He then asked O'Neal, "How tall do you think this young man standing next to me is right now?" O'Neal responded, "I would say around 5'6" or 5'7"." She testified that she believed appellant was about 5 feet and 6 or 7 inches because he was "[p]robably an inch or more" taller than herself. When the court asked O'Neal to put her fingers apart to show what she believed was one inch, O'Neal clarified that she was confused as to inches versus feet, and that when she said appellant was an inch taller, she meant to say he was *a foot* taller. When asked again how tall she believed appellant was, O'Neal responded, "5'6", 5'7"." When asked, "Well, when you say 5'6", do you mean five foot six inches tall?", O'Neal responded, "I just know that the person was taller than me. I don't know how many inches or how many feet." When the court asked O'Neal to put her hands apart to show "how much taller" appellant was, she put her hands six to eight inches apart.[3]

BART police officer Robert Krehbiel was on duty the night of the incident and received a report that a strong arm robbery had just occurred by the station. The suspects

[2]Appellant is approximately 6 feet and 4 or 5 inches tall.

[3]It is not clear from the record whether the court was asking how much taller appellant was compared to O'Neal, or compared to the other two men.

were described to him as "two black males, one wearing a gray-colored hoodie sweatshirt." He located two individuals matching that description in the "bus zone" by the BART station. One individual—who Krehbiel identified in court as appellant—was wearing a "gray-colored hoodie sweatshirt" and was approximately 6 feet 4 or 5 inches tall; the other was wearing a "dark hoodie sweatshirt" and was 5 feet 5 inches or 5 feet 7 inches tall. As Krehbiel approached the two individuals, they began running away. Another officer caught appellant and handcuffed him.

At a show-up conducted approximately 30 minutes after the assault and robbery, O'Neal recognized appellant's clothing, hair, face, and features, and identified him as one of the assailants. According to BART police officer Timothy Eads, who was with O'Neal during the in-person lineup, O'Neal identified appellant "immediately." Eads testified that he stated in a police report he prepared that appellant was wearing gray shoes, and that "[t]he other unknown suspect" was wearing red and white shoes. Eads further testified that appellant was in possession of an orange hat at the time of his arrest.

Appellant testified that he arrived at the BART station on the night of the incident at approximately 10:55 or 11:00 p.m. He was alone at the bus stop for approximately 30 minutes as he waited for the bus and charged his phone using a phone charger that was located at the bus stop. He stayed seated at the bus stop "the whole time." He did not rob or hurt anyone and was never in the parking lot area in which O'Neal was robbed. When asked why he ran from police, he testified, "Cause I was past my curfew, and the way they approached me, I didn't know what was going on." He testified he did not see anyone else "running around [him]."

In sustaining the petition, the juvenile court stated, "In hearing the minor's testimony, one concern, if not fatal, as far as his credibility, was the fact that he characterized himself as, I was just there. I was this lone, African American male in the BART parking lot, and they focused on me. And it's clear, not from the victim, but two police officers, that he—the person consistent with this description was with somebody else, and was running away. And for various reasons, I didn't find the minor credible at all. . . ." The court noted that O'Neal, after seeing appellant in court, "continued to

4

maintain . . . that he was about 5'5". So she was asked, well, how much taller was this person . . . what do you mean by an inch? And she essentially put her hand almost six to eight inches apart. [¶] And that, I think, was very obvious . . . she was confusing the feet and inches, and how much taller was the person to you, that was her assailant. And again, she pointed almost 12 inches, and that's very consistent with [appellant's] appearance. He was not only I.D.'d by her on two occasions, he was I.D.'d by the police officers in the company of other folks consistent with the victim's testimony earlier. [¶] I'm satisfied with her responses, and characterization as to her confusion."

## DISCUSSION

### *Ineffective Assistance of Counsel*

Appellant contends his trial counsel provided him with ineffective assistance of counsel because he failed to introduce into evidence a photograph of appellant wearing dark shoes on the night of the incident, and because counsel failed to impeach O'Neal with that photograph after she testified that appellant was wearing red and white shoes. We reject the contention.

A criminal defendant is entitled to representation sufficiently competent under professional norms so as not to deny the defendant a proceeding with a reliable result. (*Strickland v. Washington* (1984) 466 U.S. 668, 686–696; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.)" 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*In re Valdez* (2010) 49 Cal.4th 715, 729.)

A finding of ineffective assistance of counsel is warranted only if the defendant establishes: (1) performance by counsel deficient under the objective standards of reasonable attorney performance; and (2) prejudice. (*Strickland v. Washington*, *supra*, 466 U.S. at pp. 688–692.) In evaluating allegations of deficiency, our scrutiny of the challenged actions or omissions of counsel is highly deferential. (*Id*. at p. 689.) This means we must indulge in a strong presumption that counsel's conduct fell "within the wide range of reasonable professional assistance; that is, the defendant must overcome

5

the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Ibid*.) Where, as here, the record is silent regarding the reason for trial counsel's actions, the judgment must be affirmed unless "there simply could be no satisfactory explanation" for the conduct. (*People v. Maury* (2003) 30 Cal.4th 342, 389.) "Prejudice" from deficient performance by counsel occurs only where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

Here, there was a satisfactory explanation for trial counsel's decisions. As noted, appellant testified he was alone and seated at the bus stop "the whole time," and that he was also by himself when he fled from police. Thus, his position—and his defense—was that he was never with either of the other suspects, and that he was completely misidentified by O'Neal as one of the three assailants. Trial counsel therefore reasonably focused his cross-examination and argument on issues that would tend to show that appellant was not associated with the other two assailants. For example, he emphasized that O'Neal described the assailants to police as "all . . . approximately 5'4" tall"—much shorter than appellant. He also elicited testimony from O'Neal that none of the three assailants was wearing or holding a hat, then elicited testimony from Eads that appellant was in possession of an orange hat at the time of his arrest. Both of these facts separated appellant from the group of three assailants, all of whom were much shorter than he, and none of whom were wearing or holding any hats.

In contrast, emphasizing shoe color would not have eliminated appellant as a suspect, and might have further connected him to the crime. As noted, there was police testimony that appellant was seen—and fled from police—with another suspect who was shorter than appellant and was wearing a black hoodie and *red and white shoes*. O'Neal testified that one of the assailants was shorter than appellant and had on a black hoodie. O'Neal also placed the red and white shoes at the scene of the incident by testifying that appellant was wearing red and white shoes when he attacked her. In other words, it was

6

undisputed that *one* of the three perpetrators was wearing red and white shoes. In light of the police testimony that appellant fled from police along with *a suspect wearing red and white shoes*, counsel could have reasonably determined that it would not be helpful—and would possibly be harmful—to direct the court's attention to shoe color by introducing the photograph into evidence and attempting to impeach O'Neal regarding the color of appellant's shoes.

Moreover, appellant has not shown he was prejudiced by trial counsel's decision. He states that the introduction of the photograph into evidence and cross-examination of O'Neal would have "undercut [O'Neal's] credibility as to her identification." At best, however, cross-examination would have revealed her inability to recall which assailant wore a particular pair of shoes.[4] It would not—as stated above—have eliminated appellant as a suspect. In light of O'Neal's multi-faceted and consistent identification of appellant[5] and the court's finding that appellant was not "at all" credible, it is not reasonably probable that appellant would have achieved a better result had trial counsel presented additional evidence regarding the color of his shoes.

### *Assault*

Appellant was found to have committed assault likely to produce great bodily injury (§ 245, subd. (a)(4)). That statute describes the offense as a so-called "wobbler," punishable as either a felony or a misdemeanor. When a minor "is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." (Welf. & Inst. Code, § 702; see also Cal. Rules of Court, rule 5.780(e)(5) ["If any offense may be found to be either a felony or a misdemeanor, the court must consider

---

[4]We note that the challenged photograph was admitted into evidence by the prosecutor. The court was therefore presumably aware of any questions the image raised regarding O'Neal's identification of appellant.

[5]O'Neal saw appellant both before and during the attack, "immediately" identified him as one of the perpetrators in the in-person lineup, and identified him again in court. Her identification was based on multiple factors, including appellant's light gray hoodie, his hair, and his face and features.

which description applies and expressly declare on the record that it has made such a consideration, and must state its determination as to whether the offense is a misdemeanor or a felony"]; *In re Manzy W.* (1997) 14 Cal.4th 1199, 1205, 1207.)

In *In re Manzy W.*, *supra*, 14 Cal.4th at p. 1204, the California Supreme Court explained that Welfare and Institutions Code section 702 "requires an explicit declaration by the juvenile court whether an offense would be a felony or misdemeanor in the case of an adult." "[N]either the pleading, the minute order, nor the setting of a felony-level period of physical confinement may substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or felony. [Citation.] Instead, 'the crucial fact is that the court did not state at any of the hearings that it found the [offense] to be a felony.' " (*Id*. at p. 1208.)

Here, the assault allegation was charged as a felony and recognized as such by the juvenile court at the beginning of the proceedings. However, the court never explicitly stated whether the ultimate finding was as a felony or a misdemeanor. Thus, as appellant argues, and respondent concedes, the matter must be remanded to permit the court to make that express declaration.

### DISPOSITION

The judgment is affirmed and the matter is remanded to the juvenile court to expressly state whether its finding as to section 245, subdivision (a)(4), is a felony or a misdemeanor.

_____
McGuiness, P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

8